[Crim. No. 2223.   Second Appellate District, Division One.—July 30, 1932.]

THE PEOPLE, Respondent, v. BENJAMIN F. GARDNER, Appellant.

Paul Taylor and Richard Kittrelle for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant Gardner and one Stromberg were charged with the commission of the crime known as "possession of a still", alleged to have been operated by them for the purpose of manufacturing intoxicating liquor for beverage purposes.

On the trial, after all the evidence had been introduced, through his attorney, defendant Stromberg indicated "that he would change his plea to the court and plead guilty". Thereupon the trial court found each of the defendants "guilty of the offense charged, to-wit, the possession of a still, a felony". From the ensuing judgment, as well as from an order by which his motion for a new trial was denied, defendant Gardner has appealed to this court.

It is first urged by appellant that the evidence adduced on the trial of the action was insufficient to support the judgment.

Although not established without contradiction as to each of several important items of testimony, from the record and based upon substantial evidence, it may be assumed that the court believed that on several different occasions the two defendants together called at a real estate office for the ostensible purpose of renting a chicken ranch for the use of defendant Stromberg. As was testified by a salesman who was employed by the proprietor of the real estate office, defendant Gardner said "that he wanted to rent a ranch with some chicken equipment for his partner, there; that he

wasn't very well, and he wanted to get him out in the country; that he wanted to get in the chicken business. I told him we had a dandy place; just about what he wanted. He said he didn't want a big house; just a small house with a few rooms, and that this was a dandy place for him; and I took him over there to 1917 Holly and showed him the place. Q. What else was said there? A. Well, they looked the place over, and they went all over the chicken equipment and through the house, . . . Q. Then what happened after that? A. Well, I think we disbanded then and there and they came back later on, as near as I can remember. Q. Where did you see them the next time? A. Why, they came back to the office, and something was said about a lease—they were going to draw up a lease, and, of course, I had nothing to do with the lease. The broker took care of the lease. Q. And were both defendants together at that time? A. Yes, sir.''

The real estate broker who was the employer of the salesmen in his office, testified that he had seen defendant Stromberg at the real estate office on several different occasions, and that on the third visit of defendant Stromberg to the office,—under the name of ''Harry Allen'',—Stromberg signed a lease of the chicken ranch. It also appeared that the defendants were arrested within two weeks after the lease of the chicken ranch was executed, at which time the still was in full operation. A police officer testified that in a chicken-house on the leased premises he found a complete still for the manufacture of intoxicating liquor; that at the time they were arrested for the commission of the offense in question the two defendants were together on the leased property, ''sitting in the car directly back of the house, between the house and the garage''. According to the testimony of defendant Gardner, he was the owner of the automobile to which the policeman referred, but that on several different occasions within the two weeks following the leasing of the chicken ranch he rented the automobile to defendant Stromberg, although on each of such occasions defendant Gardner ''would drive it for him'' (Stromberg). It also appeared that at the time when defendants were arrested, defendant Stromberg had two keys in his possession which respectively fitted the outer and the inner door of the chicken-house in which the still was operated. Suffi-

cient evidence was introduced to justify the conclusion by the trial court that at the time of his arrest defendant Gardner had in his possession a similar set of keys; that said keys, and the keys in the possession of defendant Stromberg, were manufactured by the same company; that defendant Gardner purchased and paid for certain "black iron gas pipe", which was delivered by the seller thereof on the leased property; and that pipe similar in size and character was used in the construction and the operation of the still.

In the case of *People* v. *Borrego*, 211 Cal. 759 [297 Pac. 17], wherein in many respects the facts were similar to, but taken together were much weaker than, those which relate to the instant case, the Supreme Court ruled that the evidence was sufficient to support a verdict of guilt of the defendant. Likewise in *People* v. *Mitsunaga*, 91 Cal. App. 298 [266 Pac. 1020], and *People* v. *Helt*, 100 Cal. App. 279 [279 Pac. 1046]. Primarily, the question of whether the evidence established the guilt of defendant was for the determination of the trial court; and since its conclusion appears to have been based upon substantial and sufficient evidence, it is not the province of this court to disturb the ensuing judgment. As is stated in *People* v. *Martinez*, 20 Cal. App. 343, 344 [128 Pac. 952], and reiterated in *People* v. *Mitsunaga*, 91 Cal. App. 298, 301 [266 Pac. 1020]: " . . . Where the circumstances are such as to reasonably justify an inference of guilt, as found by the jury, the fact that an inference of innocence might likewise be reasonably drawn therefrom does not present a question of law for review by an appellate court any more than does a verdict based upon direct conflicting evidence; in neither case will the verdict be disturbed. . . . "

■ Appellant also contends that the trial court erred in overruling his objection to a compound question asked by the prosecution of one of its witnesses. Although it is manifest that the objection was well taken and properly might have been sustained by the trial court, since the effect produced no substantial prejudice to the rights of defendant, the error should not result in a reversal of the judgment.

A further specification of error by appellant, which consists in a complaint that, over the objection of defendant, various exhibits were received in evidence, is not (the record considered) worthy of serious attention by this court.

The judgment and the order by which the motion for a new trial of defendant was denied are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 11, 1932.